UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CHRISTOPHER VELTHUYSEN,

                      Plaintiff,                      Case No. 2:14-cv-192

v.                                            HON. GORDON J. QUIST

ARAMARK CORPORATION,
INC., et al.,

                      Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by state prisoner Christopher Velthuysen pursuant to 42 U.S.C. § 1983.  Plaintiff's remaining claims are for Eighth Amendment violations against Defendants Acting Deputy Warden Daniel Lesatz, Aramark Correctional Services, Inc. (Aramark), Food Service Supervisor Rob Walbridge, Food Service Director Dan Lettinosen, and Acting Food Service Director Michael DeLisle.  Plaintiff's complaint arises from his confinement at the Baraga Correctional Facility and involves his claim that the food provided by Defendants was unsafe and prepared under unsanitary conditions.  Defendant Lesatz filed a motion for summary judgment based upon Plaintiff's failure to exhaust his administrative grievance remedies or, alternatively, a motion to dismiss based upon qualified immunity.  ECF No. 53.  Plaintiff filed a responsive pleading.  ECF No. 60.  Defendants Aramark Correctional Services, Inc., Rob Walbridge, Dan Lettinosen, and Michael DeLisle filed a motion for summary judgment arguing that Plaintiff failed to exhaust his administrative grievance remedies.  ECF No. 65.  Alternatively, Defendants Aramark Correctional Services, Inc., Rob Walbridge, Dan Lettinosen, and Michael

DeLisle move to dismiss for the reasons that Defendants are not state actors acting under color of state law, were not personally involved in the alleged improper conduct, that Plaintiff cannot demonstrate an Eighth Amendment violation, that Defendants individually are entitled to qualified immunity from liability, and that Plaintiff has failed to show that Defendant Aramark Correctional Services, Inc., had a custom or policy that violated Plaintiff's rights.  ECF No. 65.  Plaintiff has filed a motion for summary judgment asserting that Defendants' violated his rights by knowingly serving him unsanitary food.  ECF No. 61.  Defendants Aramark Correctional Services, Inc., Rob Walbridge, Dan Lettinosen, and Michael DeLisle filed a response.  ECF No. 66.

The facts were summarized in the Court's Opinion filed on April 29, 2015.

Plaintiff complains that the meals served by Aramark are nutritionally inadequate, spoiled, undercooked, watered-down and have made Plaintiff violently ill.  On December 18, 2013, Plaintiff alleges that he was served spoiled hamburger meat, moldy bread, cold noodles and gravy, and a bruised orange.  Plaintiff requested another meal tray but he was told that the kitchen was closed.  On December 19, 2013,  Plaintiff was served moldy bread, a rotten orange, cold spaghetti noodles and spinach, and warm milk.  When he requested a new tray, the Michigan Department of Corrections (MDOC) denied his request because the kitchen was closed.

On December 20, 2013, Plaintiff filed a grievance regarding the December 18 and 19, 2013, food incidents.  Plaintiff states that Defendant Walbridge denied Plaintiff's Step I grievance in an untimely response according to MDOC Policy Directive 03.02.130 "Prisoner/Parolee Grievances" (effective July 9, 2007).  Plaintiff appealed the denial of his grievance to Step II but Defendant Lesatz denied Plaintiff's Step II appeal and refused to correct the food problems.  Plaintiff appealed the grievance to Step III but it was denied.

On August 12, 2014, Plaintiff, who works in the kitchen, noticed that the oatmeal was watered down and several trays had moldy bread.  Plaintiff also found that the food trays had leftover food from the night before on them.  Plaintiff called for new trays but the food on the replacement trays had the same problems.  On August 13, 2014, Plaintiff checked the food carts again and found watered-down Ralston and jelly, and moldy toast.   Although Plaintiff

2

requested new trays, food service never sent them.  Plaintiff then filed another grievance about the food.

On August 19, 2014, Plaintiff wrote an urgent kite to healthcare services, complaining of an upset stomach, frequent bowel movements and vomiting.  Although Plaintiff was placed on call-out to see a nurse, Plaintiff's appointment was canceled.  Plaintiff continued to be sick with a high fever, upset stomach, nausea and bloody bowel movements for the next two days.  Plaintiff was finally seen by a nurse ten days after his kite.

In September 2014, Plaintiff, as block representative for his prison unit, wrote to Food Service Director DeLisle and other MDOC personnel regarding the preparation, sanitation and lack of quality of the food.  When he did not hear from DeLisle, Plaintiff sent kites to Food Service Supervisor Lettinosen, Assistant Deputy Warden Lesatz and DeLisle on September 14, 2014, concerning the sanitation of the food trays, constant food shortages and the incorrect diet trays.  (Am. Compl., docket #17, Page ID#142.) Plaintiff never received a response.

On October 18, 2014, Plaintiff alleges that he was served a tray of chicken salad with leftover gravy from a meal on October 12, 2014, bread, baked beans, spinach, a piece of cake without any frosting and an orange drink.  Plaintiff requested another tray but was told by a corrections officer, whom Plaintiff does not name as a Defendant in his amended complaint, that if Plaintiff agreed not to sue Aramark, Plaintiff would not be served a "messed[-]up" tray. (*Id.*, Page ID#144.)  Plaintiff filed a grievance regarding the October 18, 2014 incident.

ECF No. 26, PageID.160-162.

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436

(6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-216 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party

4

with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S.Ct. 1850, 1859-1860 (2016).

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If

oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution.  *Id.* at ¶ P.  The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly.  Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included."  *Id.* at ¶ R (emphasis in original).[1] The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent.  *Id.* at ¶ X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due.  *Id.* at ¶¶ T, DD.  The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances.  *Id.* at ¶ GG.  If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III.  *Id.* at ¶ FF.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF.  The Grievance and Appeals Section is the respondent for Step III grievances on behalf

---

[1] In *Holoway v. McClaren*, No. 15-2184 (6th Cir., April 7, 2016) (unpublished), the Sixth Circuit concluded that where a plaintiff fails to name each defendant in his grievance, the un-named defendants may not be dismissed for failure to exhaust grievance remedies if the MDOC did not reject the grievance under the policy requiring a grievant to name each individual involved.  The Sixth Circuit stated: "Because MDOC officials addressed the merits of Holloway's grievance at each step and did not enforce any procedural requirements, Holloway's failure to identify the defendants named in this lawsuit and to specify any wrongdoing by them in his grievances cannot provide the basis for dismissal of his complaint for lack of exhaustion." *Id*. at 3.  The Sixth Circuit failed to provide any guidance as to how the MDOC might determine who the plaintiff intended to name in a future federal lawsuit at the time the plaintiff filed his Step I grievance.

of the MDOC director.  *Id.* at ¶ GG.  Time limitations shall be adhered to by the inmate and staff

at all steps of the grievance process.  *Id.* at ¶ X.  "The total grievance process from the point of

filing a Step I grievance to providing a Step III response shall be completed within 90 calendar

days unless an extension has been approved . . . ."  *Id* at ¶ HH.

Defendants argue that Plaintiff filed two grievances in which he alleges that his

food was improperly prepared.  Defendants argue that Plaintiff failed to properly give them notice

of the grievances by specifically naming them in the grievance and indicating that they were

involved in an alleged violation of Plaintiff's rights.  In AMF 13-12-2987-09e Plaintiff asserted

that the food he received was not edible due to a "green-like patina' on the hamburger patty.   At

Step I Plaintiff wrote:

> On 12-18-13 at dinner time, I received a tray that was supposed to
> be (meatballs) but was substituted for a hamburger patty.  The patty
> had a green-like patina, so I requested another tray & the C/O on my
> wing told me to write a grievance about it, but denied me another
> tray.  The patty was unpalatable & I was unable to try it!  On 12-19-
> 13, for lunch, I requested a vegetarian meal & received spaghetti
> covered in white sauce with carrots from We[dne]sday nights meal,
> raw onions & raw celery mixed together.  This was so disgusting to
> the palate that it was uneatable.  Please rectify these for next time!
> Note:   According to: OP-04.07.103-  These things should not
> happen!

ECF No. 65-2, PageID.379.  Plaintiff has alleged more than that his food was not tasty.  Liberally

construing Plaintiff's grievance, Plaintiff claimed that he was served spoiled and moldy food.

Plaintiff asserted that the hamburger patty had a "green-like patina," and the meal was inedible.

In the opinion of the undersigned, grievance AMF 13-12-2987-09e arguably exhausted the Eighth

Amendment food claims asserted in Plaintiff's complaint.

In AMF 14-08-2331-09aA Plaintiff alleged that food was prepared improperly in

an unsanitary manner, and that the food was moldy.   Plaintiff wrote:

7

On 8-12 & 8-13-14, at 0730; I as a morning Unit Food Service Worker pulled in the food cart from the hallway, counted the trays (to see that the numbers matched with those on the cart), I observed that a large number of the cakes were un-cooked, raw & had a [doughy]-like texture when cake is un-cooked or raw inside.  I also observed the oatmeal was so watered down, that it wasn't oatmeal anymore; but watered oats.  Also, the bread wasn't toasted and some were green with mold on them.  I immediately showed the food trays to the Correctional Officer Snow & he asked the Sergeant to take pictures of the trays & the camera wasn't working properly to take the pictures, but he did "log" in the problem and called the kitchen for extra trays, and Food Service [did] send over more of these same tray (if not worse) I.E. missing items, un-cooked food, raw-moldy bread, watered down oatmeal, cold un-cooked cake, that 80% of the inmates refused to eat breakfast.

The next day, (morning) 8-13-14, I checked the food cart again for missing portions, moldy undercooked food, the cleanliness of the food cart, & food trays, etc., and observed that the Ralston was watered down, the toast was just bread, the jelly was missing from a lot of the trays or watery, the trays were caked with food from the night before, & had mustard in over 10 trays, that made these trays uneatable & so disgusting to the palate that I had to ask the sergeant to take pictures of the trays & call for replacements.

This seems to be an on-going problem with the quality of food being served at AMF Baraga, and Aramark is trying to cut so many corners that the quality of food is deteriorating more quickly day-by-day; and those of us who cannot supplement our food by the use of the store suffer.

We, as inmates at AMF-Baraga are being told to write a grievance when issues with our food come up, but the grievances are (not) getting the job corrected, as Aramark is (not) part of the M.D.O.C. and the problems with the food quality keep getting worse & worse there is no recourse or solution to the problems.

<u>Relief Requested</u>

1)      To have proper supervision when the level 1 kitchen workers are serving the food, to check for cleanliness, food quality, and un-cooked food, or spoiled food being served,

2)      The Supervisor is to make sure that the nutritional requirements are being met with the trays being served.

8

> 3)      When the trays arrive in the units, have the correctional officers inspect the quality of food being served, make sure the food cart & trays are clean, and make sure <u>no</u> items are missing & then to <u>log</u> to call for (new trays) where appropriate.

ECF No. 65-2, PageID.385-387.

In this grievance, Plaintiff alleged more than a dissatisfaction with the type of food served and the taste of the food.  Plaintiff specifically asserted that on August 12 and 13, 2014, the food was prepared in an unsanitary manner, that the food was moldy or spoiled, and that the food trays were not properly cleaned.  Plaintiff also asserted that nutritional requirements were not being met.  Plaintiff specifically named Defendant Aramark.   In the opinion of the undersigned, Plaintiff clearly exhausted these claims against Defendant Aramark.

Although, Plaintiff did not specifically name any other Defendant in this grievance, the MDOC did not enforce any procedural requirements when addressing Plaintiff's grievance on the merits at each Step of the process.  The Sixth Circuit has held that where the MDOC addresses the merits of a grievance at each Step and does not enforce procedural requirements, Plaintiff's "failure to identify the defendants named in this lawsuit and to specify any wrongdoing by them in his grievances cannot provide the basis for dismissal of his complaint for lack of exhaustion." *Holoway*, No. 15-2184.  Accordingly, in the opinion of the undersigned, Plaintiff has satisfied his burden of exhausting his claims against Defendants. [1]

---

[1]Plaintiff alleges that he did not have to grieve any of his claims in accordance with MDOC policy because the issues that he presents in his complaint concern a large body of inmates.  Plaintiff asserts that once he raised these issues at the Warden's Forum meeting, he satisfied MDOC policy and the requirement to exhaust grievance remedies prior to filing a lawsuit did not apply to these issues.  MDOC policy requires prisoners to file grievances that directly affect the grievant.  Policy Directive 03.02.130E. Policy Directive 03.02.130F(1) states that "[a] grievant may not grieve content of policy or procedure except as it was specifically applied to the grievant.  If a CFA prisoner has a concern with the content of a policy or procedure,  s/he may direct comments to the Warden's Forum as provided in PD 04.01.150 'Prisoner Housing Unit Representatives/Warden's Forum.'"  Prior to 2003 the Policy Directive stated that issues that affect the entire prison population may not be grieved.  That provision is no longer MDOC policy.   In addition, Plaintiff's grievance regarding food service complaints were addressed on the merits through each step when he presented them in a grievance.  Plaintiff has not shown or alleged that any MDOC officials informed him that his issues were not grievable.  Plaintiff has failed to show that addressing his concerns about Food Service at a Warden's Forum meeting satisfied the exhaustion requirements of the PLRA.

Plaintiff argues that he is entitled to summary judgment on his claims based upon his grievance declarations and Defendant Aramark's policy in failing to supply nutritionally wholesome food.  Plaintiff asserts that Defendant Lesatz violated his rights when he failed to respond to Plaintiff's September 14, 2014, kite concerning sanitation and food shortages.  Plaintiff asserts that Aramark employee Julie Swit told him that she substituted bags of pork because there were constant shortages on a particular pork tray.  Plaintiff argues that Defendant DeLisle violated Plaintiff's rights by failing to answer kites and correct food tray problems, ensure cleanliness, and monitor portions and special diet trays.  Plaintiff argues that Defendant Walbridge and Defendant Lettinosen allegedly violated his rights by failing to supervise level 1 kitchen workers to ensure that they were serving correct food portions, and to ensure that workers were properly cleaning trays and food carts.

Plaintiff argues that Defendant Aramark failed to properly inspect the sanitation of food service areas, provided dirty food trays, served spoiled food and improper proportions of food, failed to employ the correct sanitation procedures, and failed to serve nutritionally healthy meals.  Plaintiff asserts that the food trays failed to provide "basic human needs" due to lack of sanitation, items were missing and the proportion sizes were incorrect, the trays contained watered down or improperly heated food items, bruised or spoiled fruit, spoiled milk, spoiled meat, and old bread and butter.  Plaintiff argues that he is entitled to summary judgment on his claims against Defendants based upon his allegations, the fact that he got sick on August 21, 2014, and the declarations attached to his motion from other prisoners who agree that the food supplied by Defendants was improperly prepared and unsafe to eat.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it

contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."  *Id.* at 348.  With regard to food, prisoners must receive adequate nutrition to maintain normal health; the food need not be tasty or aesthetically pleasing.  *See Cunningham v. Jones*, 567 F.2d 653, 659-60 (6th Cir. 1977).  The Sixth Circuit has repeatedly held that a diet does not violate the Eighth Amendment where nutritional and caloric requirements are met.  *See, e.g.*, *Payton-Bey v. Vidor*, No. 94-2472, 1995 WL 603241, at *1 (6th Cir. Oct. 12, 1995); *Hinton v. Doney*, No. 93-2050, 1994 WL 20225, at *2 (6th Cir. Jan. 26, 1994); *Boswell v. Meyers*, No. 89-2144, 1990 WL 109230, at *1 (6th Cir. Aug. 2, 1990).

At this point in the proceeding, Plaintiff has made allegations that are sufficient to state a claim upon which relief may be granted.   However, Plaintiff has not provided evidentiary support that shows a lack of a genuine issue of fact that Defendants knowingly provided un-sanitized, moldy, or spoiled food to Plaintiff.  Accordingly, it is the opinion of the undersigned, that Plaintiff is not entitled to summary judgment on his Eighth Amendment claims against Defendants.

It appears that the remaining arguments on behalf of Defendants have been brought under a Fed. R. Civ. P. 12(b)(6) failure to state a claim upon which relief may be granted standard.  A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading, requiring the court to determine whether the plaintiff would be entitled to relief if everything alleged in the complaint is true.  *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).   "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle [the plaintiff] to relief."  *Conley v. Gibson*,

11

355 U.S. 41, 45-46 (1957). The court must construe the complaint in the light most favorable to plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A judge may not dismiss the complaint simply because he disbelieves the complaint's factual allegations. *Conley*, *supra*, at 47.

Generally, a complaint need only give "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *In re Delorean Motor Co. v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (*quoting Conley*, 355. U.S. at 47). The fundamental purpose of pleadings under the Federal Rules of Civil Procedure is to give adequate notice to the parties of each side's claims and to allow cases to be decided on the merits after an adequate development of the facts. *Mayer*, 988 F.2d at 638. While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *Delorean*, 991 F.2d at 1240. "In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (internal quote omitted).

Defendant Aramark and its employees Defendants Walbridge, Lettinosen, and DeLisle argue that they are private actors that cannot be sued under 42 U.S.C. § 1983 because they were not acting under color of state law. These Defendants argue that since they contracted with the MDOC to provide food service in accordance with MDOC specifications, they are not state actors and cannot be sued under § 1983 for an Eighth Amendment violation.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). In order for a private party's conduct to be under color of state law, it must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Street*,

102 F.3d at 814.  There must be "a sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly treated as that of the State itself." *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).

A private corporation that performs a public function, such as contracting with the state to run its prisons, may be found to act under color of law for purposes of § 1983. *Skelton v. Pri–Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991).  Since the MDOC has a constitutional obligation to provide nutritional and sanitized meals that are unspoiled and free from mold, a private company and its employees such as Aramark can be held liable as state actors under § 1983 for supplying meals to inmates that fail to compart to Eighth Amendment standards.  *Dotson v. Shelby County*, 2014 WL 3530820 (W.D. Tenn., July 15, 2014) citing cases holding that Aramark performs a public function when it contracts to provide food to inmates.   Similarly, several courts have determined that Aramark is a state actor when providing food services to inmates.  *Dykes v. Marshall*, 1:14-cv-1167, 2016 WL 1059618 (W.D. Mich., March 17, 2016);  *White v. Barry,* 2:14-cv-55, 2104 WL 3543729 (W.D. Mich., July 17, 2014);  *Mills v. Aramark*, 2015 WL 7820872 (S.D. Ohio, November 10, 2015); *Horn v. Hunt*, 2015 WL 5873290 (S.D. Ohio, October 8, 2015).  In the opinion of the undersigned, Defendant Aramark, Walbridge, Lettinosen, and DeLisle should be considered state actors under § 1983.

Aramark argues that Plaintiff has failed to set forth a policy or custom that could support a claim that Defendant Aramark, as a private company, violated Plaintiff's rights.  A plaintiff that sues a private or public corporation for constitutional violations under § 1983 must establish that a policy or custom caused the alleged injury.  *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998);  *Street v. Corrections Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996).

13

The Sixth Circuit has specifically held that like a municipal corporation "liability must also be premised on some policy that caused a deprivation of [a prisoner's] Eighth Amendment rights." *Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001).

Defendant Aramark has asserted that the only conduct that they have undertaken is the delivery of meals specified by the MDOC contract. Plaintiff has alleged that Defendant Aramark has prepared and served meals that contained not only underprepared foods, but spoiled and moldy foods. Further, despite knowledge of the undercooked meals, and spoiled and moldy foods, Defendant Aramark has taken no corrective action. Plaintiff has alleged that Defendant Aramark has cut corners presumably to maximize profits. At this stage of the proceeding, it is recommended that Plaintiff be given the benefit of the doubt and the opportunity to develop this issue. Accordingly, it is recommended that Defendant Aramark's assertion that Plaintiff failed to plead a policy or custom on behalf of Aramark that caused the denial of Plaintiff's rights be denied.

Defendant Aramark argues that Plaintiff cannot show a violation of the Eighth Amendment by asserting that his nutritional needs have not been met when Defendant Aramark is simply providing the foods specified by contract to the MDOC. Further, Defendant Aramark argues that occasional dissatisfaction with servings of food cannot state a claim for relief. Plaintiff alleges that food service frequently and increasingly served meals with improperly cooked, or spoiled or moldy foods. For the reasons previously stated, Plaintiff has satisfied his obligation of stating a claim upon which relief may be granted under the Eighth Amendment. Plaintiff has alleged more than simply that the food was not tasty. Plaintiff alleges that the food was spoiled and moldy.

Defendants Walbridge, Lettinosen, and DeLisle argue that they are entitled to dismissal under Rule 12(b)(6) based upon qualified immunity because Plaintiff has not alleged

14

that the individual defendants had a role in food preparation. Defendant Lesatz argues that he should be dismissed under Rule 12(b)(6) based upon qualified immunity because he is being sued only in his supervisory capacity. Defendants alternatively move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.* Plaintiff has asserted that Defendants knowingly served him moldy and spoiled food in an unsanitary manner. Plaintiff asserted that each Defendant refused to ensure that the food was prepared and presented in a sanitary manner and that the food was safe when provided

to Plaintiff.  At this stage of the proceeding, Plaintiff is entitled to develop the claims asserted in his complaint.

The Court addressed the issue of whether Plaintiff stated a claim against Defendants Lesatz, DeLisle, Walbridge, and Lettinosen in the opinion dated April 29, 2015.  ECF No.165, PageID164-165.  The individual Defendants have not set forth any new compelling argument to support their dismissal at this time.  Defendants have not supported a Rule 56 motion with affidavits or other evidence that can establish that they were not involved in the alleged wrongdoing asserted by Plaintiff.  Accordingly, it is recommended that Defendants' motion to dismiss based upon qualified immunity be denied.

To the extent that Plaintiff is suing the individual Defendants in their official capacities, such claims are barred by the Eleventh Amendment.  *See Will v. Michigan Department of State Police*, 491 U.S. 58 (1989) (claims against a state agency or an official in his/her official capacity are claims against the state, and are not claims against a "person" subject to Section 1983 liability); *Frederick v. Abramajtys*, No. 94-1935, 1995 WL 564321, **1 (6th Cir. Sept. 21, 1995) (unpublished).

Accordingly, it is recommended that Defendants' Rule 56 motions for summary judgment dismissing Plaintiff's complaint for failing to exhaust his grievance remedies (ECF No. 53 and 65) be denied.

It is further recommended that Defendants' motions based upon Rule 12(b)(6), including their claims of qualified immunity (ECF No. 53 and 65), be denied.

It is further recommended that Plaintiff's motion for summary judgment (ECF No. 61) be denied.

16

Finally, it is further recommended that "Plaintiff's motion under 56(d) of the Federal Rule of Civil Procedure for additional time to conduct discovery" ECF No. 56, be denied.[2]

Dated:      September 21, 2016            /s/ Timothy P. Greeley
                                              TIMOTHY P. GREELEY
                                              UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).

---

[2] Plaintiff made this motion before the close of discovery. If the Court accepts my recommendation, Plaintiff would not need discovery to respond to Defendants' arguments regarding Defendants Rule 56 motions for summary judgment which are based upon Plaintiff's failure to exhaust his grievance remedies. Plaintiff's grievance submissions are part of the court record.